SUMMERS, Justice.
By bill of information the District Attorney for the Parish of Orleans charged in one count that Hugo Joya forged a check drawn on the Whitney National Bank, dated April 16, 1976, in the sum of $94.25, payable to Hugo Espermas and signed “Daniel F. Young.” A second count charged that on the same day Hugo Joya issued and transferred the check in question, knowing it to be a forged writing, with intent to defraud. La.Rev.Stat. 14:72.
Joya was tried by jury, found guilty of attempting to commit forgery on the first count and guilty as charged on the second count. He was sentenced to serve five years in the custody of the Department of Corrections on the first count, and ten years in the custody of the Department of Corrections on the second count. Sentences on both counts were suspended, and defendant was placed on active supervised probation on each count for five years. As a special condition of probation, defendant was ordered to serve one year in the parish prison on each count with credit for time served and with no “good time” credit. The sentences, probationary terms, and special conditions were ordered to run concurrently.
On this appeal two assignments of error are urged and consolidated in brief for argument.
The State’s witness Sidney Haislip testified that he was assistant to the manager of a guest house where defendant Joya was staying. On April 16, 1976 Joya gave Hais-lip a check for $94.25 in payment for his room rent of $45. The check was signed “Daniel F. Young” on a printed form of the Daniel F. Young Company, Inc., made payable to the order of Hugo Espermas, endorsed by him, and drawn on the Whitney National Bank. The check was then endorsed by the manager of the guest house for deposit to her account in the Bank of New Orleans. When questioned by Haislip concerning the name of the payee, Joya explained that he worked under that name.
According to Haislip’s testimony Joya accompanied him to the Medical Plaza Branch of the Bank of New Orleans where the check was deposited. Haislip then gave Joya $50. Joya moved out of the guest house shortly thereafter and left no forwarding address.
Several days later Haislip received a certificate by mail from the Bank of New Orleans advising that the check was issued with an unauthorized signature. The matter was reported to the police and Joya was arrested about two months later on June 25, 1976.
*545 During Haislip’s direct testimony as a State witness he was asked why he gave Joya $50 when the check was deposited. Defense counsel objected to the relevancy of the question and the testimony sought to be elicited arguing that the matter was “far afield”. The objection was overruled. The witness replied that it was the difference between the face amount of the check, $94.25, and the amount Joya owed for room rent—$45.
The testimony was relevant to the facts surrounding the issuance of the check, an essential element of the crime charged. La. Rev.Stat. 14:72.
Haislip was then asked to identify and interpret the certificate from the Bank of New Orleans which was returned to him with the check. Over defense objection Haislip responded, “Yes, sir, That is what we received when the bank sent it back. It’s unauthorized signature, I suppose what that means. I’m not qualified.” The objection did not state the grounds therefor, and the judge gave no reasons for his ruling.
The defense contends that permitting the contents of the certificate to be introduced as evidence was highly prejudicial to the defendant, for it created an advantage to the State by providing hearsay proof that the signature was unauthorized. No one testified to the authenticity of. the certificate from the Bank of New Orleans.
At the outset, in presenting its case, the State called Guadalupe Yoder to the stand. She had been employed by the Daniel F. Young Company, Inc., for sixteen years and was then assistant manager of the firm. She testified that Daniel F. Young had been dead for seventy-five years, establishing by this unrefuted testimony that the signature of Daniel F. Young as maker of the check was obviously a forgery. Only she, Wester and Baker, all employees of the company, were authorized to sign checks on its behalf. She testified that no one by the name of Hugo Joya or Hugo Espermas ever worked there. Although the imprint on the check indicated it was a check of the company, it was one of a numbered series which had been ordered but never delivered to the company.
Joya’s defense was that he met a person known as “Dusty Sparks” in a barroom. In conversation there Joya agreed to repair Sparks’ automobile. After he finished the job Sparks gave him the $94.25 check in payment. Joya was unable to furnish information at the trial of Sparks’ whereabouts. Joya’s basic contention and defense, therefore, is not that the check was not a forgery but that if it was, “Dusty Sparks” was responsible.
In connection with the defense contention that Haislip should not have been permitted to read from the certificate informing him that the check contained an unauthorized signature, these rules of law are applicable: Testimony concerning the contents of written communications received by a witness are hearsay unless the author of the document is present and subject to cross-examination. La.Rev.Stat. 15:434, 463.
The hearsay rule generally excludes out-of-court statements, whether oral or written, offered to prove the truth of the matter contained in them. The reason underlying the rule is that such statements are made without an oath and their truth cannot be tested by cross-examination in the presence of the trier of fact. State v. Launey, 335 So.2d 435 (La.1976); State v. Raymond, 258 La. 1, 245 So.2d 335 (1971).
While our conclusion is that the testimony of Haislip concerning the contents of the bank’s certificate is hearsay, in the absence of a stated ground for the objection or ruling, La.Code Crim.Pro. art. 841, it may be said that although the testimony concerning the content of the certificate may not be admissible to prove the truth of its content, the fact of receipt of the certificate and its content is admissible to explain bringing this matter to the attention of the police. This latter theory would be an exception to the hearsay rule, for under that theory the offering would be to prove receipt of the information and not the truth of the statement. State v. Monk, 315 So.2d 727 (La.1975); State v. Green, 282 So.2d 461 (La.1973).
*546 The Court is also of the view that reference to the content of the certificate was harmless and non-prejudicial in view of Guadalupe Yoder’s unrefuted testimony that the signature was unauthorized, and Joya’s testimony that the check was given to him by Dusty Sparks. From Joya’s testimony it is evident that his defense was that he was unaware of the forgery, and the authenticity of the maker’s signature on the check was not therefore material to his defense. Hence the trial judge’s ruling did not result in a miscarriage of justice, nor was the ruling prejudicial to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. La.Code Crim.Pro. art. 921.
For the reasons assigned, the conviction and sentence are affirmed.
DENNIS, J., concurs in the decree.